IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JOSEPH W. HEER )
)
      Plaintiff, )
) No. 17 C 2670
v. )
) Magistrate Judge
NANCY A. BERRYHILL, Acting ) Maria Valdez
Commissioner of Social Security, )
)
      Defendant. )
)

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Joseph W. Heer's claims for Disability Insurance Benefits and Supplemental Security Income. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's request to reverse the decision of the Commissioner is granted in part and denied in part, and the Commissioner's motion for summary judgment [Doc. No. 25] is denied.

## BACKGROUND

### I. PROCEDURAL HISTORY

On July 22, 2013, Plaintiff filed claims for Disability Insurance Benefits and Supplemental Security Income, alleging disability since July 5, 2013. (R. 264–280.) The claims were denied initially and upon reconsideration, after which Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"), which was

held on December 7, 2015. (R. 51–92.) Plaintiff personally appeared and testified at the hearing and was represented by counsel. Vocational expert ("VE") Diamond Warren also testified. (*Id.*)

On January 13, 2016, the ALJ denied Plaintiff's claim for both Disability Insurance Benefits and Supplemental Security Income, finding him not disabled under the Social Security Act. (R. 27–50.) The ALJ then proceeded through the five-step sequential evaluation process required by the Social Security Regulations. *See* 20 C.F.R. § 404.1520 and 416.902(a). After noting that Plaintiff met the insured status requirement of the Social Security Act through September 30, 2013, the ALJ found at step one that Plaintiff has not engaged in substantial gainful activity since July 5, 2013, the alleged onset date. (R. 32.)

At step two, the ALJ determined that Plaintiff had the following severe impairments: hypertension, longstanding presyncope, history of cerebrovascular accident (CVA), obstructive sleep apnea, obesity, degenerative disc disease of the lumbar spine, mild osteoarthritis of the knees, major depressive disorder, and anxiety disorder. (*Id.*) The ALJ found that Plaintiff's kidney failure and right Achilles tendonitis/plantar fasciitis were non-severe impairments. (R. 33.) The ALJ concluded at step three that the impairments, alone or in combination, did not meet or medically equal the severity of a listed impairment. (R.33.) *See* C.F.R. Part 404, Subpt. P, App. 1 20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926. The ALJ analyzed Plaintiff's impairments under listings 1.02 (major dysfunction of a joint); 1.04 (disorders of the spine); 11.04 (central nervous system

2

vascular accident); 12.04 (depressive, bipolar and related disorders); and 12.06 (anxiety and obsessive-compulsive disorders). (R. 33–34.)

Before step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the following limitations: Plaintiff can never climb ladders, ropes or scaffolds but can occasionally climb ramps and stairs; and occasionally balance, stoop, kneel, crouch, and crawl. Plaintiff must avoid exposure to hazards, such as work at heights or around dangerous moving machinery. Plaintiff can understand, remember, and carry out routine tasks. The work should involve simple instructions, occasional decision making, and occasional changes in the workplace setting. Plaintiff can have occasional interaction with the public and relate on at least a superficial and ongoing basis with coworkers and supervisors. (R. 35.) At step four, the ALJ concluded that Plaintiff was not capable of performing his past relevant work. (R. 41.) At step five, based on Plaintiff's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform including cleaner/polisher, small parts assembler, and marker II/labeler. (R. 42.) Because of this determination, the ALJ found that Plaintiff was not disabled. (R. 43.)

The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

# DISCUSSION

I. **ALJ LEGAL STANDARD**

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform her former occupation? and (5) Is the claimant unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step 3, precludes a finding of disability. *Id.* The claimant bears the burden of proof at steps 1–4. *Id.* Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II. JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a claimant, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex*

*rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning . . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994); *see Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014) ("This 'sound-bite' approach to record evaluation is an impermissible methodology for evaluating the evidence.").

### III. ANALYSIS

Plaintiff argues that the ALJ's decision is erroneous for four reasons. First, Plaintiff contends that the ALJ improperly weighed the medical opinion evidence of three of his treating physicians. Second, Plaintiff argues that the ALJ erred in giving the state doctors great weight when they did not have access to the whole record. Third, Plaintiff asserts that the ALJ's RFC determination was not supported by substantial evidence. Finally, Plaintiff argues that the ALJ erred in evaluating the testimony of the VE, and therefore the ALJ's step five finding was not supported

6

by substantial evidence. For the reasons that follow, the Court finds that remand is appropriate.

A. **Medical Opinion Evidence**

Plaintiff established care with Dr. Joyce Miller, M.D., in June of 2015 after Plaintiff's previous treating doctor left the center where he was receiving treatment. (R. 860, 863, 870.) Generally, Plaintiff presented to Dr. Miller for one hour of individual therapy either weekly or bi-weekly, with psychiatric follow ups every two months. (R. 915.) On December 1, 2015, Dr. Miller completed a mental impairment questionnaire, wherein she diagnosed Plaintiff with major depressive disorder and anxiety disorder and assigned him a GAF of 45.[1] (R. 915–21.) Dr. Miller also opined that Plaintiff would have no useful ability to function in the following areas: performing at a consistent pace without an unreasonable number and length of rest periods; dealing with normal work stress; and dealing with the stress of semiskilled and skilled work. (R. 917–18.) Ultimately, Dr. Miller opined that Plaintiff had moderate restriction of activities of daily living, extreme difficulties in maintaining social functioning, extreme difficulties in maintaining concentration, persistence, or

---

[1] The GAF includes a scale ranging from 0–100 and indicates a "clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. Text Rev. 2000) (hereinafter DSM-IV). The Court notes that the fifth edition of the DSM, published in 2013, has abandoned the GAF scale because of "its conceptual lack of clarity . . . and questionable psychometrics in routine practice." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 16 (5th ed. 2013); *see Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014) (recognizing that the American Psychiatric Association abandoned the GAF scale after 2012).

pace, and had four or more episodes of decompensation within a twelve-month period, each of at least two weeks' duration. (R. 919.)

An ALJ must give controlling weight to a treating physician's opinion if the opinion is both "well-supported" and "not inconsistent with the other substantial evidence" in the case record. 20 C.F.R. § 404.1527(c); *see Scott v. Astrue,* 647 F.3d 734, 739 (7th Cir. 2011). If the ALJ does not give the treating physician's opinion controlling weight, she "must offer good reasons" for discrediting the opinion. *Campbell v. Astrue,* 627 F.3d 299, 306 (7th Cir. 2010) (internal quotations omitted). Treating physician opinions are given more weight due to "their greater familiarity with the claimant's condition and circumstances." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003).

The ALJ determined that Dr. Miller's opinion was only entitled to "some weight" because it was "somewhat" inconsistent with the record and with her own treatment notes. (R. 41.) First, the ALJ concluded that Dr. Miller's opinion that Plaintiff would be seriously limited in the ability to carry out, understand, and remember very short and simple instructions was inconsistent with Plaintiff's testimony that he could follow written and spoken instructions with assistance. (R. 41, 917.) This one example of contradictory evidence aside, the ALJ failed to show that Dr. Miller's opinion was otherwise inconsistent with other substantial evidence in the record. To the contrary, in fact, the ALJ ignored other evidence which supported Dr. Miller's opinion. For example, the ALJ did not address the findings of Plaintiff's primary care physician, Dr. Humaira Khan, M.D., who noted limitations

8

similar to those articulated by Dr. Miller, including that Plaintiff would be off task twenty-five percent of the time, and that Plaintiff would be unable to perform even simple tasks due difficulties with attention and concentration. (R. 702–03, 914.) Without a discussion of the supportive evidence, the ALJ failed to provide sufficient evidence for his determination that Dr. Miller's opinion was inconsistent with the record. This was in error.

The ALJ's determination that Dr. Miller's opinion was inconsistent with itself is likewise unsupported. In particular, the ALJ stated that Dr. Miller's findings in her questionnaire were "not supported by her own contemporaneous notes." (R. 41.) The ALJ does not go on to explain exactly what was inconsistent between the two. Without such evidence, the Court cannot determine if the ALJ properly weighed Dr. Miller's opinion.

Plaintiff, however, points to multiple treatment notes that corroborate Dr. Miller's opinion regarding Plaintiff's anxiety and inability to handle stress. Dr. Miller indicated in August of 2015 that Plaintiff's anxiety would make it difficult for him to work due to stress and a tendency to panic. (R. 833.) A progress note from Christian Community Health Center (under the supervision of Dr. Miller) from July of 2015 noted that Plaintiff struggled with coping, was depressed, and had panic attacks that appeared out of nowhere. (R. 856.) The ALJ failed to create a logical bridge explaining what evidence from Dr. Miller's treatment notes contradict her opinion. Although the ALJ is not required to include or discuss every piece of evidence in the record, the ALJ must evaluate the record fairly and may not exclude

9

evidence contrary to the ruling. *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003).

Plaintiff also argues that the ALJ failed in giving Dr. Miller less than controlling weight without weighing the factors listed in 20 C.F.R. § 404.1527(c). Where an ALJ does not give a treating physician controlling weight, the regulations require the ALJ to consider a variety of factors when determining what weight to give the treating physician. *Campbell*, 627 F.3d at 308. Those factors include: (1) the length, nature, and extent of the treatment relationship; (2) the frequency of examination; (3) the physician's specialty; (4) the types of tests performed; and (5) the consistency and support for the physician's opinion. *See Id.*

Here, the ALJ failed to discuss the length, nature, and extent of the treatment relationship, as well as the frequency of examination. As Dr. Miller noted in her questionnaire, she met with Plaintiff once or twice per week for hourly sessions. (R. 915.) She also saw Plaintiff bi-monthly for follow-ups on his psychiatric care. (*Id.*) The ALJ does not discuss any off this evidence in her decision. This too, is a remandable error.

### B. State Agency Doctors

Plaintiff also argues that the ALJ mistakenly accorded the greatest weight to the findings of the state agency medical consultants who opined that he was not disabled. *Pl.'s Br.* at 14–15. In particular, Plaintiff claims that the opinions of the state agency doctors cannot constitute substantial evidence because they did not have the opportunity to review the entire record before they authored their

10

opinions. (R. 106–08, 120–23.) The later-dated evidence included additional pages of treatment notes, as well as the opinions of Plaintiff's treating primary care physician and treating psychiatrist, amounting to over 200 pages of unreviewed evidence. (R. 911–14, 915–19.) The ALJ gave the state agency consultants significant weight, finding them consistent with the record. (R. 40.) The ALJ stated that they provided a good summary of the evidence and explanation for their findings. (R. 40.)

An ALJ is required to weigh the degree to which non-examining opinions consider and weigh evidence, including the evidence of treating physicians. 20 C.F.R. § 404.1527(c)(3) ("We will evaluate the degree to which these medical opinions consider all of the pertinent evidence in [Plaintiff's] claim, including medical opinions of treating and other examining sources.") The ALJ gave only little or some weight to all the treating and examining physicians. (R. 40–41.) Yet he gave significant weight to the non-examining state physicians and psychological consultants. (R. 40–41.)

The ALJ failed to articulate why the evidence provided by the non-examining consultants was entitled to greater weight than the evidence provided by Plaintiff's examining and treating sources, particularly in light of the fact that the non-examining sources did not review over 200 pages of evidence, including two treating doctor's opinions. The opinions of state agency consultants can be given weight only to the extent they are supported by evidence in the record, which includes evidence that was not in their possession at the time they issued their opinions. SSR 96-6p,

1996 SSR LEXIS 3[2]; *see also* 20 C.F.R. § 404.1527(c)(3) (stating that "because nonexamining sources have no examining or treating relationship with [Plaintiff], the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their medical opinions.") Here, the state agency consultants' opinions that Plaintiff was not disabled were inconsistent with at least two treating doctors' opinions who, based on more evidence, later opined that Plaintiff was disabled. The ALJ must build a logical bridge explaining how the state agency consultants' opinions are more consistent with the record than the treating and examining source opinions. Without such a bridge, the court is unable to determine if the ALJ properly gave more weight to non-examining sources than it did to three treating doctors and an examining doctor. *See Campbell v. Astrue,* 627 F.3d 299, 309 (7th Cir. 2010) (where the state agency consultants did not have treatment records, and those records included information that would affect the reviewer's assessment of Plaintiff's RFC, remand was required.)

### C. Remaining Arguments

The Court expresses no opinion about the decision to be made on remand but encourages the Commissioner to use all necessary efforts to build a logical bridge between the evidence in the record and her ultimate conclusions, whatever those conclusions may be. *See, e.g.*, *Myles v. Astrue*, 582 F.3d at 678 ("On remand, the ALJ should consider all of the evidence in the record, and, if necessary, give the parties

---

[2] SSR 96-6p, 1996 SSR LEXIS 3 was rescinded and replaced by SSR 17-2P, 2017 LEXIS 2, effective March 27, 2017. However, because the ALJ rendered his decision on January 13, 2016, SSR 96-6p, 1996 SSR LEXIS 3 was effective at the time of the decision, and the court applies SSR 96-6p, 1996 LEXIS 3 in this decision.

the opportunity to expand the record so that he may build a 'logical bridge' between the evidence and his conclusions."); *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000); *Luna v. Shalala*, 22 F.3d 687, 693 (7th Cir. 1994). The Commissioner should not assume that any other claimed errors not discussed in this Order have been adjudicated in her favor. On remand, the Commissioner therefore must carefully articulate her findings as to every step.

## CONCLUSION

For the foregoing reasons, Plaintiff's request to reverse the decision of the Commissioner is granted in part and denied in part, and the Commissioner's motion for summary judgment [Doc. No. 25] is denied. The Court finds that this matter should be remanded to the Commissioner for further proceedings consistent with this Order.

**SO ORDERED.**  **ENTERED:**

**DATE:   September 19, 2018**  _____
**HON. MARIA VALDEZ**
**United States Magistrate Judge**